

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

_____ )
KICHUL LEE, *et al.*,                      )
                                                    )
                        Plaintiffs,         )
            v.                                     )
                                                    )
ALBERTO R. GONZALES,          )
Attorney General *et al.*,                )
                                                    )
                        Defendants.    )
                                                    )
_____ )

NO. C04-0449RSL

ORDER REGARDING MOTION
TO ENFORCE COMPLIANCE

16          This matter comes before the Court on plaintiffs' "Motion to Enforce

17    Compliance."  Dkt. # 199.  Plaintiffs seek a declaration and corresponding order that

18    defendants are not in compliance with the terms of the Settlement Agreement insofar as

19    they (1) initially rejected applications for naturalization from persons who were on

20    probation and (2) have not processed these applications "in normal Seattle District

21    processing time."  Settlement Agreement at ¶ 4C.

22          The motion to enforce compliance is moot as to the first issue.  The parties

23    apparently had a disagreement regarding whether persons on probation were class

24    members, but the issue was resolved in plaintiffs' favor without Court intervention.

25    Regardless of whether defendants' initial interpretation of the Settlement Agreement was

26    justified or not, U.S. Citizenship and Immigration Services ("CIS") is now considering

27    applications for naturalization from all class members in compliance with the agreement:

28    an order compelling such action is therefore unnecessary.

The phrase "normal Seattle District processing time" in the Settlement Agreement is purposely vague.  Based on general principals of contract interpretation, the Court finds that the parties intended to ensure that class members were treated the same as other applicants for naturalization without unduly limiting CIS' ability to investigate and consider each application on its merits.  The record[1] suggests that, as of October 15, 2007, the normal processing time for applications for naturalization was seven months.  The seven-month time frame is not a guarantee, however.  The "normal" processing time can be extended if additional information is needed or if the applicant does not cooperate throughout the interview process.

Plaintiffs argue that defendants are not in compliance with the Settlement Agreement because an application submitted by Abdisimad Ali in August 2006 is still pending.  The application was initially rejected because CIS believed he was not a class member.  By the time CIS agreed to accept Ali's application on April 18, 2007, his service file had already been shipped to the Refugee Affairs Division so that it could adjudicate his mother's application for refugee status.  Despite repeated assurances that the service file would be returned from the Refugee Affairs Division in the near future, there has been no progress on Ali's application.

The Court is not concerned with defendants' failure to process Ali's application between August 2006 and April 2007:  that delay was caused by a misunderstanding regarding the scope of the settlement and, as far as CIS was concerned, the application was not pending during that period.  The delay after April 18, 2007, however, while not yet enough to warrant sanctions, is of concern.  When Ali resubmitted his application for naturalization eight months ago, he was told that HQ would return his service file and that an interview would be scheduled shortly.  Plaintiffs waited five months to seek to compel action on his application, at which point defendants said that

---

[1]  Much, if not all, of the "evidence" submitted by the parties on this issue is inadmissible, but the Court is willing to assume that the website information provided by plaintiffs could be authenticated and that a signed version of Ms. Harrison's declaration could be presented by defendants.

the file would be returned in a "few weeks."  Declaration of Julia L. Harrison at ¶ 7.
Apparently in reliance on defendants' representation, plaintiffs continued their motion to
enforce compliance until October 19, 2007, and then again until November 16, 2007.
Despite plaintiffs' patience, the service file is still with the Refugee Affairs Division and
Ali's application remains in limbo.

          This is not a case in which CIS has been compelled to wait for another
agency or foreign government to act.  Defendants have, and have always had, Ali's
service file – it just happens to be in an office other than the Seattle Field Office.  Despite
the fact that defendants are under a contractual obligation to process Ali's application for
naturalization "in normal Seattle District processing time," they have made no effort to do
so.  The normal processing time, barring an incomplete application or the recalcitrance of
the applicant (neither of which is alleged here), is seven months.  Ali is fast approaching
the nine-month mark and CIS has not even begun reviewing his application on the merits.
There is no indication that the Seattle Field Office has impressed upon the Refugee
Affairs Division its contractual need to process Ali's application, that the Refugee Affairs
Division has made any attempt to expedite its handling of Ali's file, or that defendants
have even requested a copy of the service file if the original is truly unavailable.  The
reasons for this continuing delay range from bureaucratic incompetence at best to a
blatant disregard of defendants' settlement obligations at worst:  whatever the cause, Ali
has waited long enough.

          For all of the foregoing reasons, defendants are hereby ORDERED to
process Abdisimad Ali's application for naturalization within thirty days from the date of
this Order.  If the original service file cannot be overnighted from the Refugee Affairs
Division without unduly interfering with its operations, a copy should be obtained
forthwith.  Failure to process Ali's application within the thirty-day period will result in
monetary sanctions of $25 per day unless defendants show good cause, prior to the

expiration of the thirty-day period, why the period should be extended.[2]

Dated this 2nd day of January, 2008.

*Mhr S Lasnik*

Robert S. Lasnik
United States District Judge

---

[2] In their reply memorandum, plaintiffs argue that Ali is simply an example of the many probationers whose applications for naturalization have not been processed in "normal" time. They cite Balwant Singh as another example, but provide no information regarding when CIS accepted his application. The Court cannot, on such scant evidence, determine whether Singh's application has been pending longer than the "normal" seven months or whether the circumstances of Singh's case, such as the need for additional information or a failure to appear for an interview, explain any additional delay that may exist.