1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15

_____
                                                    )
KICHUL LEE, *et al.*,                       )
                                                    )
                        Plaintiffs,           )          Case No. C04-0449RSL
                                                    )
            v.                                   )
                                                    )
MICHAEL MUKASEY,                     )          ORDER REGARDING SECOND
Attorney General *et al.*,                  )          MOTION TO ENFORCE
                                                    )          COMPLIANCE
                        Defendants.         )
                                                    )
_____)

16    This matter comes before the Court on plaintiffs' "Second Motion to

17  Enforce Compliance."  Dkt. # 210.  Plaintiffs seek (1) a declaration that defendants are

18  not in compliance with the terms of the Settlement Agreement because a high percentage

19  of class members' applications have been pending for more than the "normal Seattle

20  District Office processing time" (Settlement Agreement at ¶ 4C) and (2) an order

21  compelling defendants to make additional information available to ensure future

22  compliance with the Settlement Agreement.[1]

23    "The construction and enforcement of settlement agreements are governed

24  by principles of local law which apply to interpretation of contracts generally."  O'Neil v.

25  Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004).  Under Washington law, the purpose of

26  contract interpretation is to ascertain the parties' intent at the time of contracting.  See,

27  _____

28    [1]  Defendants' unopposed motion to supplement their opposition (Dkt. # 215) is GRANTED.

1    e.g., Berg. v. Hudesman, 115 Wn.2d 657, 663 (1990) (quoting A. Corbin, The

2    Interpretation of Words and the Parol Evidence Rule, 50 Cornell L. Quar. 161, 162

3    (1965)).  "Determination of the intent of the contracting parties is to be accomplished by

4    viewing the contract as a whole, the subject matter and objective of the contract, all the

5    circumstances surrounding the making of the contract, the subsequent acts and conduct of

6    the parties to the contract, and the reasonableness of respective interpretations advocated

7    by the parties."  Stender v. Twin City Foods, Inc., 82 Wn.2d 250, 254 (1973).

8            As noted in the Court's prior order, the phrase "normal Seattle District

9    Office processing time" is purposefully vague.  The parties intended to ensure that class

10    members were treated the same as other applicants for naturalization without unduly

11    limiting USCIS' ability to investigate and consider each application on its merits.  That

12    does not mean that the phrase is meaningless, however.  A review of USCIS documents

13    issued since the Settlement Agreement was signed shows that the normal processing time

14    for N400 applications filed before June 2007 fluctuated between five and ten months.[2]

15    Although the five-to-ten month time frame is not a guarantee, where an application is

16    subject to delays beyond what is normally expected, the burden falls on defendants to

17    explain why it could not be adjudicated within the "normal" processing time.

18            Defendants have identified eight reasons why an application could be

19    delayed beyond ten months:

20        (1) USCIS is awaiting the results of the background check from the FBI;
        (2) USCIS is awaiting the criminal history records from the FBI; (3) USCIS
21       is awaiting a response from the applicant to a request for evidence; (4) the
        application is pending eligibility review by an Adjudications Officer; (5)
22       the

23

24    _____

25        [2]   See, e.g., http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a
   7543f6d1a/?vgnextoid=68439c7755cb9010VgnVCM10000045f3d6a1RCRD&vgnextchannel=68439c77
26    55cb9010VgnVCM10000045f3d6a1RCRD&reqPageNum=13 and https://egov.uscis.gov/cris/jsps/
   officeProcesstimes.jsp?selectedOffice=73.  There is evidence that the five-to-ten month time frame may
27    not apply to applications filed after June 1, 2007.  USCIS experienced a significant increase in the number
   of applications filed last summer and, despite efforts to hire additional immigration officers, the increase is
28    already having an adverse impact on the "normal" processing time for N400 applications in the Seattle
   Field Office.

1  application is pending review by a Supervisor; (6) the application [sic] is
2  pending an interview; (7) the applicant has moved outside the jurisdiction
3  of the Seattle Field Office and their application has been transferred to the
   appropriate office; and (8) the applicant failed to sign the application.

4  Opposition at 3.  It is not entirely clear which of these eight reasons defendants believe

5  justifies an extraordinary delay in processing an application.  The Court will therefore

6  address each of them.

7           Reasons numbered 1, 2, 4, 5, and 6 are too general to explain any particular

8  delay suffered by one or more class members.  By entering into the Settlement

9  Agreement, defendants voluntarily undertook a contractual duty to adjudicate class

10 members' N400 applications within the "normal Seattle District Office processing time."

11 By definition, the "normal Seattle District Office processing time" includes the time it

12 takes to conduct criminal history and background checks, review the file, conduct an

13 interview, and reach a decision on the application.  The fact that another agency is

14 involved in the review process does not, in and of itself, excuse defendants' failure to

15 comply with the terms of the Settlement Agreement.  Nor can the foreseeable and

16 expected need for agency action justify extraordinary delay.  Defendants have made no

17 effort to explain the discrepancy between the "normal" processing time in the Seattle

18 Field Office and the significant delays experienced by many of the individual class

19 members.  Nor have they presented evidence regarding the progress made on any

20 particular application or the efforts they have undertaken to obtain information from the

21 FBI in a timely manner.  The fact that N400 applications go through a series of reviews at

22 two different agencies does not explain why certain applications are processed within five

23 to ten months and others have languished for years.

24          On the other hand, an incomplete application or an applicant's failure to

25 respond to a request for additional information can justify an extraordinary delay.[3]

26

27
         [3]  See Dkt. # 205 at 3 ("The normal processing time, barring an incomplete application or the
28 recalcitrance of the applicant (neither of which is alleged here), is seven months.").

Defendants have provided evidence that one class member, Khai Cao Truong, submitted an unsigned application and has not remedied the situation since it was brought to his attention in March 2007.  The Court finds that the delay in adjudicating this particular application is reasonable and no breach has been shown.  Defendants have not, however, presented sufficient evidence from which the Court could conclude that any other applicant caused an application to be delayed past the ten month "normal" time frame.  In their quarterly status report, defendants generally indicate only that a certain event has or has not occurred.[4]  There is no indication of the date on which the event, such as the filing of a renewed N400 application or the issuance of a request for additional information, took place.  It is therefore impossible to tell how much of the twenty-three month delay in processing James Swaka's N400 application, for example, was the result of agency inaction as opposed to the applicant's failure to respond to the N-14 request for information.  If the N-14 were issued recently, it would not justify defendants' previous failure to adjudicate the application in the "normal Seattle District Office processing time."

Finally, defendants note that two applicants have moved outside the jurisdiction of the Seattle Field Office.  Neither party has addressed the legal significance of this change.  The Court is unable to determine whether the relocation of a class member releases defendants from their contractual duty to process the renewed application within ten months.

Piecing together the information provided by the parties in their declarations, the Court finds that at least thirty-three class members filed their applications for naturalization before June 2007 and did not receive a decision within the

---

[4]  In some instances, the information provided in the status reports is ambiguous and, therefore, unhelpful.  For example, a check mark in the column titled "Name checks status" has no inherent meaning because a check mark is not responsive to an inquiry regarding "status."  Does the check mark indicate that an applicant has successfully completed the name check process?  It could mean that a name check has been requested or that the FBI has identified a problem such that further delays should be expected.  Defendants' report is so abbreviated that it provides no reliable information regarding the status of the name check inquiry.

1  "normal Seattle District Office processing time" of ten months.[5]  Defendants argue that

2  some of these delays were caused by the applicant's failure to respond to an N-14 request

3  for additional information, but they have failed to produce evidence from which the Court

4  could conclude that the extraordinary delays were the fault of the applicants and not the

5  agency.  The Court therefore finds that defendants are not in compliance with paragraph

6  4.C. of the Settlement Agreement.  Defendants shall complete their review and

7  adjudication of these thirty-three applications within thirty days of the date of this Order

8  or shall file a status report stating individualized reasons for any continuing delay.[6]

9         Plaintiffs have not argued, and the Court declines to find, that defendants

10 have breached their reporting obligations under paragraph 8 of the Settlement Agreement.

11 The Court notes, however, that defendants' check-filled quarterly report provides very

12 little information that plaintiffs or the Court could use in implementing the agreement.

13 Rather than mandate the production of additional data, the Court has placed on

14 defendants the burden of justifying extraordinary delays in processing class members'

15 N400 applications.  The failure to provide dates for key events in the processing of a

16

17        [5]  The thirty-three individuals are:

18        V. Adamovici          Z. Akhverdyan          N. Amira
          J. Cervantes-Torres    P. Chim                K. Chong
19        O. De Dios             R. Gasparyan           X. Huang
          W. Hom                 R. Katru               M. Kawcznksi
20        P. Le                  H. Lee                 L. Mekkhavong-Davis
          R. Morales             Tinh Nguyen            Tu Nguyen
21        X. Nguyen              C. Ocampo              K. Oh
          M. Olkusz              L. Pham                N. Prasad
22        A. Simongkhonh         B. Singh               H. Singh
          S. Sou                 M. Spacek              J. Swaka
23        B. Vo                  M. Watson              B. Yevstingneyev

24 Mr. H. Singh's application was recently denied.

25        [6]  Because any analysis of defendants' future compliance with the Settlement Agreement requires
   guidance regarding the "normal" processing time for applications filed on or after June 1, 2007, the Court
26 will accept defendants' representations and presume that the "normal Seattle District Office processing
   time" for such applications is fifteen months.  Defendants have the burden of explaining any processing
27 delays in excess of that time frame.  The fifteen-month presumption is rebuttable, such that the parties
   may submit evidence that the processing time for applications filed on or after June 1, 2007, is, in fact,
28 longer or shorter than that presumed by the Court based on the current record.

ORDER REGARDING MOTION
TO ENFORCE COMPLIANCE - 5

1  particular application will make it very difficult, if not impossible, for the Court to

2  conclude that an extraordinary delay is reasonable and justified.

3

4          For all of the foregoing reasons, plaintiffs' motion to enforce compliance is

5  GRANTED in part and DENIED in part.

6

7          Dated this 19th day of May, 2008.

8

9                                    _MₙₜS Casnik_

10                                   Robert S. Lasnik
                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28