UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
KICHUL LEE, *et al.*,

        Plaintiffs,

        v.

MICHAEL MUKASEY,
Attorney General *et al.*,

        Defendants.
_____

Case No. C04-0449RSL

THIRD ORDER REGARDING
ENFORCEMENT OF SETTLEMENT

This matter comes before the Court on "Defendants' Status Report Regarding Order Regarding Second Motion to Enforce Compliance" (Dkt. # 217) and "Defendants' Second Status Report Regarding Order on Second Motion to Enforce Compliance" (Dkt. # 259).

Defendants voluntarily undertook a contractual duty to adjudicate class members' N400 applications within the "normal Seattle District Office processing time." In previous orders, the Court found that defendants are not meeting their settlement obligations and ordered the prompt adjudication of thirty-four applications or a statement of individualized reasons for any continuing delay. Dkt. # 205 and # 216. The Court specifically noted that the pendency of an FBI background or name check was an

unacceptable explanation for extraordinary delays.[1] Dkt. # 216 at 3. Nevertheless, defendants again rely on generalized excuses, particularly the FBI's involvement, when explaining why a number of applications have not yet been processed. Defendants even express surprise that they might be expected "to obtain information regarding the applicants' name checks from the FBI" and request at least six weeks if such information is required. Reply at 2.

The source of defendants' surprise and confusion is unclear. The excuses on which defendants rely were already found to be insufficient. Defendants were informed on May 19, 2008, that they must provide specific information regarding a particular application in order to justify an extraordinary delay in processing time and that they cannot rely on activities that are undertaken with regards to every applicant. If applications could not be timely processed because of name check delays, the Court demanded the kind of detailed information that was clearly within the FBI's ken. Why efforts were not made to acquire the relevant information from the FBI during the past three months is inexplicable.

Having reviewed the submissions of the parties and the remainder of the record in this matter, it is hereby ORDERED that:

(1) Defendants shall, within seven days of the date of this Order, review and amend the information provided to plaintiffs' counsel pursuant to Paragraph 8 of the Settlement Agreement to include the date on which defendants received the class members' N400 applications. The receipt dates of applications that have already been adjudicated need not be provided. Defendants shall, to the best of their ability, ensure that the receipt dates are accurate based on the primary documents, authenticated records, and/or consultation with plaintiffs' counsel.

---

[1] "Reasons numbered 1, 2, 4, 5, and 6 are too general to explain any particular delay suffered by one or more class members. . . . By definition, the 'normal Seattle District Office processing time' includes the time it takes to conduct criminal history and background checks, review the file, conduct an interview, and reach a decision on the application. . . . The fact that N400 applications go through a series of reviews at two different agencies does not explain why certain applications are processed within five to ten months and others have languished for years." Dkt. # 216 at 3.

(2) The normal processing time for N400 applications in the Seattle Field Office has varied over time. For purposes of this Order, the Court adopts the following "normal" time frames:

      (a) N400 applications filed before June 2007 – 10 months

      (b) N400 applications filed in June 2007 – 15 months

      (c) N400 applications filed between July 1, 2007, and the present – 12 months

(3) Although the stated time frames are not guarantees, where an application is subject to delays beyond what is normally expected, the burden falls on defendants to explain why the application could not be adjudicated within the "normal" processing time. After complying with paragraph (1) above, defendants shall, within twenty-one days of the date of this Order, provide detailed and specific information regarding the processing of any applications that have not been adjudicated within the "normal" processing time. Activities included in the processing of all applications, such as conducting criminal history and background checks, reviewing the file, scheduling and conducting an interview, and reaching a decision on the application, cannot explain extraordinary delays. If FBI involvement is blamed for a delay, defendants shall provide the date on which the FBI's services were requested, the date that a request for expedited review was made, what phase(s) of the review process has been completed, what information was discovered that has delayed the processing, the expected date by which the issues raised will be resolved, and any other information that might provide good cause for the delay.[2] If an outstanding N-14 request for additional information is the purported cause of a delay, defendants shall identify the information or lack thereof that prompted the request and the date on which defendants were first aware of the problem. While information or deficiencies that first appeared at the interview may justify additional delay, issues that were apparent for months but were not acted upon will probably not extend the "normal" processing time absent good cause.

---

[2] If the information regarding the FBI's activities presents a risk to national security, it may be provided *in camera* with a summary to counsel.

(4) The information required in paragraph (3) above shall be updated every two months until all of the class members' applications have been adjudicated.

Dated this 25th day of August, 2008.

*signature*

Robert S. Lasnik
United States District Judge